881 A.2d 803

ANTONIO STRICKLAND, PLAINTIFF, v. 212 CORP OF N.J., A.C. LANDMARK GROUP, INC., FIRST BOSTON CORP., JOHN DOE, AND PAUL DOE BUSINESS ENTITY, J/S/A, DEFENDANTS.

Superior Court of New Jersey
Law Division (Civil)
Atlantic County

Decided May 2, 2005.

*S. Caroline Granato, Radano & Lide,* for Plaintiff.

*Edward J. Tucker, Tucker & Munyon,* for Defendant A.C. Landmark Group.

*Kathleen J. Collins, Litchfield Cavo,* for Defendant 212 Corp. of N.J.

William C. TODD, III, P.J.Cv.

This opinion deals with the interpretation and implementation of *N.J.S.A.* 2A:17–56.23b, commonly known as the child support lien statute. That statute requires child support judgment searches to be made before funds can be distributed to individuals who have recovered a monetary award through civil litigation. The statute requires payment of outstanding child support obligations revealed by the search. It also authorizes distribution to the prevailing party when the search indicates there are no judgments of record.

The case involves a plaintiff who resides in another state, who has negotiated a settlement of his personal injury claim in litigation pending in this state. The question presented is whether the attorney representing the plaintiff is authorized to distribute the proceeds of that settlement to him, without arranging for the payment of child support arrearages which have accrued in another state and which the attorney may have information about, when the judgment search conducted pursuant to the statute indicates there are no judgments docketed in New Jersey. This court has concluded that such a distribution is authorized by the statute in question, provided that the distribution is made within thirty days of the date of the judgment search.

The underlying action arises out of a slip and fall accident that occurred on the premises of an apartment building in Atlantic City in September 2001. The complaint was filed in August 2003. It indicated that plaintiff was then a resident of North Carolina who was visiting Atlantic City on the day in question. Answers were filed on behalf of the defendants through two insurance carriers. A settlement agreement was apparently reached between plaintiff Strickland and defendants in January 2005 for a total of $20,000. As of the time this matter was presented to the court, defendants' insurance companies had not released the funds to plaintiff's counsel.

Plaintiff's attorney was aware, as a result of discussions with her client, that he had child support obligations which had accrued in North Carolina. It was not clear, however, that a judgment had been entered in New Jersey reflecting those obligations. In accordance with the statute in question, plaintiff's attorney conducted a child support judgment search through Charles Jones, Inc., by submitting a certification indicating plaintiff's name, address, date of birth and Social Security number. That search was conducted in January 2005, at the time the parties agreed to the settlement. The results of that search indicated that no judgments were entered against the plaintiff in New Jersey. The formal language that appeared in the certification provided by the search company indicated that the index of the civil judgment and order docket of the Superior Court of New Jersey was "clear."

Having reviewed that information from the search company, plaintiff's attorney was still concerned about her own obligations under the statute. For that reason, plaintiff's attorney filed a motion leading to this decision, seeking permission to distribute the settlement funds directly to her client.

Defendants did respond to the motion, arguing in part that North Carolina and the beneficiaries of the child support orders entered in that state should be given an opportunity to file the appropriate documents in New Jersey to permit enforcement of the support obligations in New Jersey, and also expressing concern as to potential liability of the insurance carriers involved.

An initial hearing was conducted in March 2005, at which point the court determined the matter should be adjourned to provide notice to the appropriate North Carolina child support agencies. That notice was provided. An agency from North Carolina did respond to that notice by letter dated April 2005 indicating that plaintiff owes approximately $57,000 in child support in three different counties in that state. There was no indication that a judgment had been entered in New Jersey to reflect these child support obligations which had accrued in North Carolina.

An additional hearing was conducted in late April 2005. The court ultimately determined that plaintiff's attorney had complied with the statute and should be able to distribute the settlement funds. Since the matter had been delayed for some time, the court also decided to deal more specifically with the time during which the distribution would be permitted in relation to the time of the search. The court did conclude that the settlement proceeds could be distributed to plaintiff, provided that the distribution be made within thirty (30) days of the date of the judgment search.

Two statutory provisions, enacted at separate times, frame the issues presented. *N.J.S.A.* 2A:17-56.23a was enacted in 1988 and provides that a child support judgment is entitled to full faith and credit. The statute states in pertinent part:

> Any payment or installment of an order for child support, or those portions of an order which are allocated for child support, whether ordered in this State or in another state, shall be fully enforceable and entitled as a judgment to full faith and credit and shall be a judgment by operation of law on and after the date it is due. For obligors who reside or own property in this State, such judgments, once docketed with the Clerk of the Superior Court, shall have the same force and effect, be enforced in the same manner and be subject to the same priorities as a civil money judgment entered by the court. The State shall accord full faith and credit to child support judgments or liens of other states, whether arising by operation of law or having been entered by a court or administrative agency, when a Title IV-D agency, a party, or other entity seeking to enforce such a judgment or lien in this State files a Notice of Interstate Lien, in the form prescribed by the federal Office of Child Support Enforcement, and supporting documents with the Clerk of the Superior Court.
>
> [*N.J.S.A.* 2A:17-56.23a]

 The purpose of this statutory section is to ensure that child support judgments docketed in New Jersey are fully enforceable. This includes orders entered in New Jersey, as well as those entered in other states. In New Jersey, when an order for child support is entered it automatically becomes an enforceable lien. However, the full faith and credit provision is only applicable to out of state judgments when a judgment has been entered here or a Notice of Interstate Lien has been filed. In this case, there is no indication that either the North Carolina child support agencies or the beneficiaries of the child support orders arranged

for entry of a judgment or lien in New Jersey as of the date of the child support search or the hearings conducted by the court. For those reasons, *N.J.S.A.* 2A:17–56.23a had no real impact on the court's decision.

This case involves the interpretation of *N.J.S.A.* 2A:17–56.23b. That statute was enacted in 2000. At the time *N.J.S.A.* 2A:17–56.23b was enacted the Legislature repealed *N.J.S.A.* 2A:17–56.37. That prior statute had established a procedure to be followed upon the resolution of any civil action to insure that funds received by the beneficiary of the litigation would be applied to past due child support. Under that statute the court was to require the submissions of certifications identifying the beneficiary of the litigation and was also to direct that distributions not be made for a period of thirty days after certifications were submitted. The child support agencies and probation departments were given that thirty-day period to determine if child support arrearages were due and to then provide notice of that to the attorneys involved. If arrearages were due, the proceeds of the litigation were to be paid toward those arrearages. Notably, that statute dealt only with the proceeds of civil litigation. The Legislature was apparently not satisfied with that statutory scheme. That statute was repealed.

*N.J.S.A.* 2A:17–56.23b replaced *N.J.S.A.* 2A:17–56.37. Under the new statute other procedures were established to provide a mechanism for collection of past due child support. The statute is not limited to actions which proceed through the courts. By its own terms it applies to "the net proceeds of any settlement negotiated prior or subsequent to the filing of a lawsuit, civil judgment, civil arbitration award, inheritance or workers' compensation award." Depending on the circumstances, the statute requires certain things from parties or beneficiaries, their attorneys and insurance carriers. In simple terms, the statute requires child support searches to be completed, and permits the distribution of funds when that search indicates that no judgments have been entered. Assuming a judgment for child support has been entered or

docketed, the child support agencies, probation departments and recipients of child support are not required to take any other action under the statute itself. Essentially, the new statute shifted the burden of searching for the child support judgment to the parties involved in other proceedings.

At issue here are provisions of the statute dealing with obligations of the attorneys involved in litigation which results in funds being available to a child support obligor. In that context, the structure of the statute is relatively straightforward. There are two steps set forth in the statute as indicated in the following subsections.

b. Before distributing any net proceeds of a settlement, judgment, inheritance or award to the prevailing party or beneficiary:

(1) the prevailing party or beneficiary shall provide the attorney, insurance company or agent responsible for the final distribution of such funds with a certification that includes the prevailing party's or beneficiary's full name, mailing address, date of birth and Social Security number; and

(2) the attorney representing the prevailing party or beneficiary shall initiate a search of child support judgments, through a private judgment search company that maintains information on child support judgments, to determine if the prevailing party or beneficiary is a child support judgment debtor.

[*N.J.S.A.* 2A:17–56.23b(b)]

An additional provision of the statute then authorizes distribution of settlement funds based on the results of the search.

If the certification shows that the prevailing party or beneficiary is not a child support judgment debtor, the net proceeds may be paid to the prevailing party or beneficiary immediately. If the certification shows that the prevailing party or beneficiary is a child support judgment debtor, the attorney, insurance company or agent that initiated the search shall contact the Probation Division of the Superior Court to arrange for the satisfaction of the child support judgment.

[*N.J.S.A.* 2A:17–56.23b(c)]

It appears this has all been done in this case. A certification revealing plaintiff's full name, address, date of birth and Social Security number was provided and used in completing the search. A search was conducted through Charles Jones, Inc., in January 2005. The results of that search came back "clear," and the report issued by Charles Jones was supplied to the court. The

motion seeking confirmation of the right to distribute the funds in question was filed relatively quickly in February 2005.

There are a number of issues presented in interpreting the statute, all of which support the result reached here. One question relates to the extent of the child support judgment search and whether the search should only be done in New Jersey or must be conducted in other jurisdictions as well. While the statutory language does not address the issue directly, it seems clear the statute was not intended to require searches in other jurisdictions. Requiring searches to be completed in all jurisdictions would be expensive and burdensome on attorneys and insurance carriers. In any event, there is nothing in the statute to suggest that the Legislature intended to require inquiries as to obligations not recorded or docketed in New Jersey. Nowhere in this statute are other states even mentioned.

In this case, plaintiff's attorney was aware from her contact with plaintiff that he did have some child support obligations in North Carolina. One can easily imagine a system under which an attorney who has any notice of a potential child support obligation is required to withhold distributions indefinitely, or to initiate some proceedings to resolve the issue. There is no reasonable basis for interpreting this statute in that fashion. The statute is specific and clearly dependent on the results of the child support search.

There is one portion of *N.J.S.A.* 2A:17–56.23b(c), produced above, which is potentially confusing. This is the portion of the statute which deals with the distribution of funds. The statute requires distributions to be made based on what is shown by "the certification." The statute permits the proceeds of the settlement be paid to the plaintiff if the certification shows he is not a child support judgment debtor. In the alternative, the statute requires that arrangements be made to satisfy the child support obligation in question if the certification shows the plaintiff is a child support debtor. The preceding sections of the statute, however, do not appear to refer to the certification which is to provide that

information. The only preceding reference to a certification is in *N.J.S.A.* 2A:17–56.23b(b)(1), which requires the initial submission of a certification indicating the plaintiff or prevailing party's name, address, date of birth and Social Security number, all necessary to arrange for the judgment search. There is no reason why that certification would deal with the question of whether or not the plaintiff was, in fact, a child support debtor. A subsequent section of the statute, however, provides that an attorney will not be liable for distributing funds based on the results of "a judgment certification." *See N.J.S.A.* 2A:17–56.23b(d). In that context, it is clear the certification referred to in *N.J.S.A.* 2A:17–56.23b(c) is the certification produced by the private judgment search company, indicating the results of the search. The document produced by that private judgment search company here is in the form of a certification. It does appear the Legislature intended to permit or require distributions based on the results of the judgment search alone. The fact that plaintiff may owe child support in another state, not yet reduced to judgment here, or that plaintiff's attorney may have knowledge of that is of no moment under this statute.

Having concluded that plaintiff's attorney was permitted to make a distribution based on the results of the search, the court was then confronted with another issue, not addressed directly in the statute. Specifically, is there some limitation, in terms of time, on an attorney's ability to rely on a child support search in making a distribution? In this case, plaintiff's attorney arranged for the search at the time the parties agreed to the settlement of the underlying claims, before any funds had been forwarded to her by the carriers and then filed the motion leading to this decision. For those reasons, there was obviously going to be a substantial delay from the time of the search to the time of the anticipated distribution. A similar problem could be presented, however, in almost every case. It is easy to see how there will normally be some delay in the distribution of funds after a search has been completed. Some attorneys, litigants or insurance companies may want to confirm the status of potential child support obligations

before a settlement is finalized giving rise to the types of delay presented here. Some attorneys may arrange for judgment searches before settlement discussions begin. Even in those cases where the attorney has control of the funds at the time the search is requested or completed, there presumably will be some brief delay before actual distribution. Is there a period of time during which an attorney can rely on a prior search in making a distribution? Must the distribution be made on the day the search is conducted, or on the day the attorney receives the results of the search? Can an attorney wait one day, one week or longer to make the distribution? The statute does not address the issue.

The court was satisfied it was essential to address the problem, particularly given the facts at issue here where there had been a delay of several months as the matter was being presented to the court. From the court's perspective, it appeared appropriate to balance a number of competing interests in resolving the problem. On the one hand there is an obvious benefit to having distributions made as quickly as possible after a search has been completed, to insure that judgments that may have been recorded late in the process are enforced. On the other hand, requiring distributions to be made immediately could create some administrative problems, including the need for multiple searches if there has been some unexpected delay. Counsel suggested the court fix forty-five to sixty days as the time during which counsel could rely on a prior search in making a distribution, noting it often takes some time to exchange the materials necessary to finalize a settlement. The court considered those periods excessive, but did conclude it was appropriate to permit reliance on a prior search for a period of thirty days. Obviously, this in an issue that might be reviewed by the Legislature.

This case illustrates a number of problems with the implementation of the statute in question. In general terms, it is obvious the statute was intended to provide a mechanism for enforcing obligations for past due child support which arise both in this state and in other states. In the particular circumstances here, where

the plaintiff or beneficiary resides in another state and has had some temporary presence here, the statute does not appear to provide any meaningful protection to obligations which have accrued in some other state. The reason for that is apparent. The implementation of this statute is based on the requirement imposed on one party or another to obtain a child support search, and on the obligations created when that search reveals that a judgment has been docketed in New Jersey. Obviously, the statute is only effective when a judgment has been entered here.

In the circumstances presented here, however, neither the child support agencies in plaintiff's home state nor the individual child support recipients in question would have any notice that plaintiff would be receiving a payment as a result of the settlement of litigation pending in this state. In this case, notice was provided to the child support agencies in question, but only at the court's direction, in response to the filing of the motion seeking permission to make the distribution in question. That motion was filed by plaintiff's own attorney, based on her legitimate concerns as to her own obligations, but there is nothing in the statute in question which required such a motion to be filed. In most circumstances, one could expect the funds in question to be distributed without any notice to the court or to the child support agencies in other states. Notably this problem extends not just to the distribution of the proceeds of litigation, but to all the other potential interests which are subject to the statutory procedure.

It may be that some arrangements should be made to attempt to protect the beneficiaries of child support orders in these circumstances. A number of alternatives could be suggested, but all appear to be problematic. It does not appear practical to require searches to be done in every state, given the cost involved. (In this case, plaintiff's attorney was charged $10 for the New Jersey search.) Similarly, it would be difficult to justify requiring child support agencies or individual recipients to have judgment entered in every state to protect against the problem presented here. One might require a plaintiff or beneficiary to disclose

whenever support obligations have accrued in other states, and then require searches in those states or contact with the support agencies involved. Alternatively, one might simply require the child support obligor to disclose the existence of pending litigation to the beneficiaries of the child support obligation, to permit those beneficiaries to arrange for the entry of a judgment in the state in question. Those last two alternatives, however, are obviously dependent on the honesty of the obligor in question. Each could give rise to factual disputes as to the conduct of the obligor, the attorney or other individuals involved in the process. It is also possible the problem could be addressed by establishing some national registry or data base that would permit child support searches to be done on a nationwide basis.

In any event, those are alternatives to be considered by the Legislature. At issue here is the interpretation and implementation of an existing statute. As currently structured, this statute does not appear to prohibit a distribution of the proceeds of this settlement to plaintiff. To the contrary, the statute specifically authorizes the distribution based on the results of the child support search. An appropriate order has been entered.